CORRECTED COVER SHEET

**STATE OF LOUISIANA,**      \*      **NO. 2021-K-0512**

**VERSUS**      \*

     **COURT OF APPEAL**

**STANLEY WALDRON**      \*

     **FOURTH CIRCUIT**

     \*

     **STATE OF LOUISIANA**

**\* \* \* \* \* \* \***

APPLICATION FOR WRITS DIRECTED TO
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 211-012, DIVISION "DIVISION D"
Honorable Darren M Roy,
\* \* \* \* \* \*
**Judge Sandra Cabrina Jenkins**
\* \* \* \* \* \*
(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins,
Judge Lynn M. Luker, Pro Tempore)

*DYSART, J., DISSENTS*

Perry Michael Nicosia, District Attorney
Aston Licciardi, Assistant District Attorney
ST. BERNARD PARISH DISTRICT ATTORNEY
1101 West St. Bernard Highway
Chalmette, Louisiana 70043

     COUNSEL FOR RESPONDENT/STATE OF LOUISIANA

Hardell H. Ward
The Promise of Justice Initiative
1024 Elysian Fields Ave.
New Orleans, Louisiana 70117

     COUNSEL FOR RELATOR/PETITIONER

        **WRIT GRANTED; RULING REVERSED**

        **JANUARY 24, 2022**

*SCJ*
*LML*

Relator, Stanley Waldron, seeks review of the district court's June 15, 2021 ruling denying petitioner's claim for post-conviction relief. Relator argues that his 2000 conviction by a non-unanimous jury verdict violates the Sixth Amendment of the United States Constitution, as held in *Ramos v. Louisiana*, 590 U.S. ___, 140 S.Ct. 1390 (2020). Relator further argues for the retroactive application of the *Ramos* decision because the unconstitutional nature and racially discriminatory origins of non-unanimous verdicts fundamentally harms the accuracy and fairness of trial proceedings. Based upon our review of the relevant jurisprudence, and in consideration of this Court's recent decision in *State v. Melendez*, 21-0597, unpub. (La. App. 4 Cir. 11/10/21), we find that *Ramos* must be applied retroactively to non-unanimous verdicts on state collateral review. Accordingly, we grant relator's writ, reverse the district court's judgment, and grant relator's petition for post-conviction relief.

1

## PROCEDURAL BACKGROUND

On May 12, 2000, relator was found guilty of attempted second-degree murder by a non-unanimous jury verdict of 11-1. The trial court sentenced relator to serve fifty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On appeal, this Court affirmed his conviction and sentence. *State v. Waldron*, 00-2756, unpub. (La. App. 4 Cir. 6/12/02), *writ denied*, 02-1993 (La. 6/20/03), 847 So.2d 1221.

On April 6, 2021, relator, represented by counsel, filed an application for post-conviction relief, on the grounds that his conviction by a non-unanimous jury violates the Sixth Amendment to the United States Constitution. On June 15, 2021, the district court heard arguments regarding the grounds for relator's application for post-conviction relief. At the conclusion of the hearing, the district court denied relator relief without reasons.

Relator now seeks supervisory review of the district court's ruling denying him post-conviction relief.

## DISCUSSION

An application for post-conviction relief must assert one of the grounds for granting relief under La. C.Cr.P. art. 930.3.[1] In his application, relator asserts that

---

[1] La. C.Cr.P. art. 930.3 provides

> If the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:
>
> (1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;
> (2) The court exceeded its jurisdiction;
> (3) The conviction or sentence subjected him to double jeopardy;
> (4) The limitations on the institution of prosecution had expired;
> (5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or

his conviction was obtained in violation of the U.S. Constitution, because his non-unanimous jury verdict violates the Sixth Amendment, pursuant to *Ramos*. *See* La. C.Cr.P. art. 930.3(1). In addition, relator asserts his application is timely filed in accordance with La. C.Cr.P. art. 930.8(2), because his application was filed within one year of the *Ramos* decision, which established a "theretofore unknown interpretation of constitutional law" and which relator asserts is retroactively applicable to his case.[2] Relator acknowledges, however, that he is entitled to relief only if the *Ramos* holding applies retroactively in state post-conviction proceedings.

Relator filed his application prior to the ruling in *Edwards v. Vannoy*, 593 U.S. __, 141 S.Ct. 1547 (2021), in which the United States Supreme Court held that the *Ramos* holding does not apply retroactively in cases on federal collateral review. However, the U.S. Supreme Court noted that the states "remain free, if they choose, to retroactively apply the jury-unanimity rule as a matter of state law in state post-conviction proceedings." *Id.*, 141 S.Ct. at 1559.

---

(6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.
(7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

[2] La. C.Cr.P. art. 930.8 provides in pertinent part,

A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:

(2) The claim asserted in the petition is based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.

3

Since the *Edwards* ruling, Louisiana courts have split on the retroactive application of *Ramos* in state post-conviction proceedings. *See State v. Melendez*, 21-0597, unpub. (La. App. 4 Cir. 11/10/21) (determining *Ramos* must be applied retroactively in the interest of justice and fundamental fairness due to the "historically racist motivations behind the adoption of the non-unanimous jury verdict practice" and granting post-conviction relief); *State v. Nelson*, 21-461, unpub. (La. App. 3 Cir. 11/10/21), 2021 WL 5232244 (relying on the Supreme Court's *Teague* analysis in *Edwards*, the Court held that the *Ramos* decision has no retroactive effect on collateral review); *State v. Carter*, 21-666, unpub. (La. App. 5 Cir. 11/8/21), 2021 WL 5869530 (finding trial court did not err in denying post-conviction relief, because our State laws currently do not provide that the unanimity requirement applies retroactively to cases on collateral review). However, the Louisiana Supreme Court has not issued an opinion directly addressing the retroactivity of *Ramos* in Louisiana post-conviction proceedings. In anticipation of the Louisiana Supreme Court granting writs to address this issue and resolve the split in the circuits, we now elaborate on this Court's position that the *Ramos* decision must be applied retroactively, as held in *Melendez*.

**Racially motivated and unconstitutional law**

As acknowledged in *Ramos*, the origins of Louisiana's non-unanimous verdicts are undeniably racially motivated. Justice Gorsuch, writing for the Court, explained that the non-unanimous jury provision was passed during Louisiana's 1898 constitutional convention, the purpose of which, according to one committee

4

chairman, was to "establish the supremacy of the white race." *Ramos*, 590 U.S. at __, 140 S.Ct. at 1394. Alongside several laws intended to disenfranchise African-Americans, including a poll tax and a literacy and property ownership tax, the non-unanimous jury provision was intended to exclude African-Americans from the jury verdict without explicitly revealing such intent. "With a careful eye on racial demographics, the convention delegates sculpted a 'facially race-neutral' rule permitting 10-2 verdicts in order 'to ensure that African-American juror service would be meaningless.'" *Ramos*, 590 U.S. at __, 140 S.Ct. 1394 (citation omitted).

In addition, in a partial concurrence, Justice Kavanaugh discussed the discriminatory impact and explicit unconstitutional nature of non-unanimous verdicts, as follows:

> In light of the racist origins of the non-unanimous jury, it is no surprise that non-unanimous juries can make a difference in practice, especially in cases involving black defendants, victims, or jurors. After all, that the whole point of adopting the non-unanimous jury requirement in the first place. And the math has not changed. Then and now, non-unanimous juries can silence the voices and negate the votes of black jurors, especially in cases with black defendants or black victims, and only one or two black jurors. The 10 jurors 'can simply ignore the views of their fellow panel members of a different race or class.' That reality—and the resulting perception of unfairness and racial bias—can undermine confidence in and respect for the criminal justice system.
>
>          \*       \*       \*
>
> [T]he non-unanimous jury 'is today the last of Louisiana's Jim Crow laws. And this Court has emphasized time and again the 'imperative to purge racial prejudice from the administration of justice' generally and from the jury system in particular.
>
> To state the point in simple terms: Why stick by an erroneous precedent that is egregiously wrong as a matter of constitutional law, that allows convictions of some who would not be convicted under the proper constitutional rule, and that tolerates and reinforces a practice that is thoroughly racist in its origins and has continually racially discriminatory effects?

*Ramos*, 590 U.S. __, 140 S.Ct. at 1417-19 (Kavanaugh, J., concurring in part) .

Though the discussion of the racist origins of Louisiana's non-unanimous verdict is dicta, the Court definitively ruled that non-unanimous verdicts are unconstitutional, finding that the Sixth Amendment requires a unanimous verdict to support a felony conviction and that the requirement applies to state and federal criminal trials equally. In reaching this conclusion, the Court looked to the history, text and structure of the Sixth Amendment and found that the Sixth Amendment has always required unanimity in criminal trials:

> The text and structure of the Constitution clearly suggest that the term 'trial by an impartial jury' carried with it *some* meaning about the content and requirements of a jury trial.
>
> One of these requirements was unanimity. Wherever we might look to determine what the term 'trial by an impartial jury trial' meant at the time of the Sixth Amendment's adoption—whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward—the answer is unmistakable. A jury must reach a unanimous verdict in order to convict.

*Ramos*, 590 U.S. at __, 140 S.Ct. at 1395.

In addition, the Court ruled that *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628 (1972), a plurality decision that allowed the non-unanimous verdict laws of Oregon and Louisiana to stand, never established governing precedent finding non-unanimous verdicts did not violate the Sixth Amendment. *Ramos*, 590 U.S. at __, 140 S.Ct. at 1402-05. Thus, for the first time, the Court definitively ruled that Louisiana's non-unanimous jury verdict law was unconstitutional, because the Sixth Amendment, since its adoption, has always "included a right to a unanimous verdict." *Ramos*, 590 U.S. at __, 140 S.Ct. at 1402.

However, in *Ramos*, the Court was only addressing the constitutionality of a non-unanimous verdict for a defendant who had not yet exhausted his right of direct review. "Whether the right to jury unanimity applies to cases on collateral review is a question for a future case[.] … That litigation is sure to come, and will rightly take into account the States' interest in the finality of their criminal convictions." *Ramos*, 590 U.S. __, 140 S.Ct. at 1407.

### *Edwards v. Vannoy*

The United States Supreme Court took up that unresolved question of retroactivity in *Edwards*, specifically, "whether the new rule of criminal procedure announced in *Ramos* applies retroactively to overturn final convictions on federal collateral review." 593 U.S. at __, 141 S.Ct. at 1551.

The Court began by noting that, under its long-standing jurisprudence, new rules of criminal procedure apply to cases on direct review, but new procedural rules generally do not apply retroactively on federal collateral review. *Edwards*, 593 U.S. at __, 141 S.Ct. at 1551-52. The Court identified one exception to the general rule of non-retroactivity, announced in *Teague v. Lane* and referred to as the "watershed exception," which would apply to "new procedures without which the likelihood of an accurate conviction is seriously diminished." 489 U.S. 288, 313, 109 S.Ct. 1060, 1077 (1989). However, the *Edwards* Court found the "watershed exception" to be more theoretical than real, stating, "[t]he Court has identified only one pre-*Teague* procedural rule as watershed: the right to counsel recognized in the Court's landmark decision in *Gideon v. Wainwright*, 372 U.S.

7

335, 344-45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Court has never identified any other pre-*Teague* or post-*Teague* rule as watershed." *Edwards*, 593 U.S. at __, 141 S.Ct. at 1557 (citing *Whorton v. Bockting*, 549 U.S. 406, 419, 127 S.Ct. 1173 (2007)). The Court then discussed and rejected Edwards' arguments for why the jury unanimity rule announced in *Ramos* meets the watershed exception.[3] Moreover, the Court declared the *Teague* watershed exception "moribund" and "to be regarded as retaining no vitality." *Edwards*, 593 U.S. at __, 141 S.Ct. at 1560 (citation omitted). Ultimately, the Court held that the *Ramos* rule does not apply retroactively, and that, without exception, "new procedural rules do not apply retroactively on federal collateral review." *Edwards*, 593 U.S. at __, 141 S.Ct. at 1559, 1562.

The Court noted, however, that this ruling applies to *federal* collateral review. "States remain free, if they choose, to retroactively apply the jury-

---

[3] The Court reviewed the three aspects of *Ramos* that the defendant emphasized in support of his argument for retroactivity: (i) the significance of the jury-unanimity right; (ii) *Ramos*'s reliance on the original meaning of the Constitution; and (iii) the effect of *Ramos* in preventing racial discrimination in the jury process. The Court discussed these aspects in relation to other landmark cases with new rules of criminal procedure that the Court did not apply retroactively, and then stated:

> The Court's decisions in *Duncan*, *Crawford*, and *Batson* were momentous and consequential. All three decisions fundamentally reshaped criminal procedure throughout the United States and significantly expanded the constitutional rights of criminal defendants. One involved the jury-trial right, one involved the original meaning of the Sixth Amendment's Confrontation Clause, and one involved racial discrimination in jury selection. Yet the Court did not apply any of those decisions retroactively in federal collateral review. *Ramos* is likewise momentous and consequential. But we see no good rationale for treating *Ramos* differently from *Duncan*, *Crawford*, and *Batson*. Consistent with the Court's long line of retroactivity precedents, we hold that the *Ramos* jury-unanimity rule does not apply retroactively on federal collateral review.

*Edwards*, 593 U.S. at __, 141 S.Ct. at 1559 (citing *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444 (1968); *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986)).

unanimity rule as a matter of state law in state post-conviction proceedings." *Edwards*, 593 U.S. at __, n. 6, 141 S.Ct. at 1559 (citing *Danforth v. Minnesota*, 552 U.S. 264, 282, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008)).

**Louisiana need not follow *Edwards***

Prior to *Edwards*, the U.S. Supreme Court already had clarified that the states were free to determine for themselves whether to follow the federal courts' rulings on retroactivity. In *Danforth*, the Court held that the *Teague* decision does not "constrain[] the authority of state courts to give broader effect to new rules of criminal procedure" and "does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed "nonretroactive" under *Teague*." *Danforth*, 552 U.S. at 266, 282, 128 S.Ct. at 1033, 42. The *Danforth* holding extends to the Court's ruling in *Edwards*; thus, Louisiana is not constrained by *Edwards* from giving retroactive effect to *Ramos* in state post-conviction proceedings.

Notably, Louisiana has not abandoned the *Teague* rule and watershed exception for retroactivity, which it first adopted in *State ex rel. Taylor v. Whitley*, 606 So.2d 1292 (La. 1992).[4] Therefore, this Court remains free to consider the retroactivity of the jury unanimity requirement in state post-conviction proceedings using a *Teague* analysis. But rather than simply follow, or abandon, *Teague* in determining retroactivity, this Court takes a nuanced approach to consider this

---

[4] "[O]ur cases have followed *Griffith v. Kentucky*, *supra*, and have applied new rules to cases pending on direct review or not yet final. … However, we have yet to consider the issue of retroactivity on collateral review in light of *Teague*. We now do so, and adopt the *Teague* standards for all cases on collateral review in our state courts." *Taylor*, 606 So.2d at 1296.

particular rule of criminal procedure under Louisiana law and within Louisiana's history. Our discussion takes into consideration Louisiana's legislative history; an invidious history of racial injustice in the legal system; and the impact on our courts and our criminal justice system of retroactively applying the jury unanimity requirement. Based on an analysis in light of those considerations, this Court concludes that the *Ramos* jury unanimity requirement must apply retroactively in state post-conviction proceedings.

**A watershed rule in Louisiana**

As a starting point, we consider the retroactivity of the *Ramos* jury unanimity rule under *Teague*, as adopted by Louisiana in *Taylor*. It is undisputed that *Ramos* announced a new rule of criminal procedure, because "the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070; *see Taylor*, 606 So.2d at 1297 (discussing the threshold consideration for whether a rule applies retroactively on collateral review). At the time this defendant's conviction became final, jury unanimity was not required under Louisiana statutes or jurisprudence.

For jury unanimity to be applied retroactively under *Teague* and *Taylor*, we consider whether it constitutes a "watershed rule of criminal procedure", one that "alter[s] our understanding of the bedrock procedural elements" essential to the fairness of the proceeding and "without which the likelihood of an accurate conviction is seriously diminished." *Taylor*, 606 So.2d at 1296; *Teague*, 489 U.S. at 313. In making this determination for Louisiana, we must take into

10

consideration our legislative history, specifically why the law allowing for non-unanimous verdicts was adopted—to deny equality and fairness to African Americans in our legal system.

Much has been written about the historical backdrop of Louisiana's non-unanimous jury verdict law, and we need not rehash that which accomplished historians and legal scholars have eloquently explained. *See* Thomas Aiello, Jim Crow's Last Stand: Nonunanimous Criminal Jury Verdicts in Louisiana (2015); Thomas Ward Frampton, *The Jim Crow Jury*, 71 Vand. L. Rev. 1593 (2018); Robert J. Smith & Bidish J. Sarma, *How and Why Race Continues to Influence the Administration of Criminal Justice in Louisiana*, 72 La. L. Rev. 361, 371-77 (2012); *United States v. State of Louisiana*, 225 F.Supp. 353, 370-74 (E.D.La. 1963) (discussing the history of disenfranchisement laws in Louisiana from statehood through the first half of the 20th century). The unanimous conclusion of these historians and legal scholars is that the original purpose of Louisiana's non-unanimous jury verdict law was to discriminate against African Americans by silencing and negating their participation in jury service.

After the original adoption of Louisiana's non-unanimous verdict law at the 1898 Constitutional Convention, the Louisiana Legislature did not revisit the law until the 1974 Constitutional Convention. The Legislature revised but reauthorized non-unanimous verdicts, enacting La. Cr.C. art. 782, which provided that capital cases be tried by a jury of twelve, all of whom must concur to render a verdict, and that all other felony cases be tried by a jury of twelve, ten of whom must concur to

render a verdict. Although legislative materials from the 1974 Constitutional Convention do not reveal discussions of race in the debate over changing the required number of jurors, *see State v. Hankton*, 12-0375, p. 20-25 (La. App. 4 Cir. 8/2/13), 122 So.3d 1028, 1038-41, any race-neutral reasons provided for reauthorizing the law do not erase or rectify its invidious origin.

Finally, in 2018, nearly 120 years after its adoption, the Louisiana Legislature proposed an amendment to La. Const. Art. 1, § 17, and revision to La. C.Cr.P. art. 782, to require unanimous jury verdicts in all felony jury trials for offenses committed after January 1, 2019. When the constitutional amendment was approved by the statewide electorate in November 2018, Louisiana finally enacted a unanimous jury verdict law. *See* La. C.Cr.P. art. 782, as amended by Acts 2018, No. 493, § 1. But the new unanimous verdict law, which only applies prospectively from 2019, did not address nor rectify the discriminatory and fundamentally unfair impact of 120 years of non-unanimous verdicts.

In addition to the foregoing legislative history, Louisiana jurisprudence consistently upheld the constitutionality of the non-unanimous verdict law. *State v. Bertrand*, 08-2215 (La. 3/17/09), 6 So.3d 738; *State v. Edwards*, 420 So.2d 663 (La. 1982); *State v. Jones*, 381 So.2d 416 (La. 1980). In *Bertrand*, the Court reasoned that the U.S. Supreme Court's decision in *Apodaca* "supports the validity of these decisions" affirming the constitutionality of non-unanimous verdicts. *Bertrand*, 08-2215, pp. 6-7, 6 So.3d at 742. But, as previously discussed, the U.S. Supreme Court in *Ramos* concluded that *Apodaca* had not established governing

12

precedent upholding the constitutionality of non-unanimous verdicts, and *Ramos* definitively held that non-unanimous verdicts are, and always have been, unconstitutional. *Ramos*, 590 U.S. __, 140 S.Ct. at 1402-05.

Prior to Louisiana's legislative amendment in 2018 and the U.S. Supreme Court's *Ramos* decision in 2020, Louisiana law and jurisprudence continually maintained that a non-unanimous verdict was fundamentally fair and constitutional. Consequently, as it applies to this state and our history of maintaining an unconstitutional procedure, the definitive ruling in *Ramos* alters the understanding and application of a bedrock procedural element of felony trials that persisted in Louisiana for 120 years. Under *Teague* and *Taylor*, we find that the jury unanimity rule announced in *Ramos* constitutes a watershed rule of criminal procedure in Louisiana.

**Fundamental fairness and accuracy versus finality**

Beyond being a watershed rule, jury unanimity ensures the fundamental fairness and accuracy of convictions. By contrast, non-unanimous jury verdicts created an unacceptable risk and consequence of inaccurate, wrongful convictions.

Prior to the *Edwards* decision, Chief Justice Johnson of the Louisiana Supreme Court, dissenting in *State v. Gipson*, 19-01815, p. 4 (La. 6/3/20), 296 So.3d 1051, 1054, discussed the problem of inaccurate convictions resulting from Louisiana's non-unanimous verdicts as follows:

> While many of those convicted by non-unanimous juries are surely guilty of the crimes of which they were convicted, we still have a subset of convictions where at least one—but often two—jurors had sufficient doubt of the accused's guilt to vote "not guilty." … We

need not look far back in history to be reminded that sometimes the will or opinion of a majority is wrong and the dissenting minority was factually, or morally, correct. But during the 120 years of Louisiana's non-unanimous jury scheme, jurors in the majority never had reason to consider the perspective or opinion of the minority of dissenting jurors, because—by design—once the jury reached a consensus of ten, dissenting voices became irrelevant. While we will likely never know how many factually inaccurate convictions have rested on non-unanimous verdicts, nor in how many the rule was a pivotal cause of the wrongful conviction, we know they have occurred.

Subsequently, in an *amicus curaie* brief filed in *Edwards*, the Innocence Project of New Orleans offered its statistics from representing sixty-two defendants who were exonerated in Louisiana: of 62 cases prosecuted in Louisiana state courts that subsequently resulted in an exoneration, there were 33 defendants tried by a jury in which a non-unanimous verdict was permitted; of those 33 defendants, 15 were convicted by a non-unanimous jury verdict. Brief of Amicus Curiaie Innocence Project of New Orleans at 3, *Edwards v. Vannoy,* No. 19-5807, (U.S. S.Ct. July 22, 2020). In addition, *amicus* stated, "[b]y cross-referencing its case/applicant database … with data on cases in which there is evidence of a non-unanimous verdict, IPNO has identified one hundred individuals that are currently incarcerated based on a non-unanimous verdict in cases in which there are indicia of innocence." *Id*. at 15. While the representations of the Innocence Project are not conclusive and may not be a legal argument for retroactivity, such information is relevant when weighing the considerations of fundamental fairness and accuracy of convictions versus the state's interest in finality of convictions.

Another relevant consideration is the impact of retroactively applying the *Ramos* jury unanimity rule in Louisiana courts. In a separate *amici curiae* brief in *Edwards*, the Promise of Justice Initiative, The Louisiana Association of Criminal

Defense Lawyers, and The Orleans Public Defenders, described to the Court how they set out to identify all of the individuals convicted by non-unanimous verdicts in Louisiana "in order to ensure those with claims can timely raise them pursuant to Article 930.8 of the Louisiana Code of Criminal Procedure." Brief of Amici Curiae The Promise of Justice Initiative et al., at 5, *Edwards v. Vannoy*, No. 19-5807, (U.S. S.Ct., July 21, 2020). Through a methodology involving extensive research of court records and outreach to incarcerated people and their families, the *amici* identified more than 1,600 incarcerated individuals with final non-unanimous convictions. As explained through further review of these cases, of the 1,601 individuals whose convictions would likely be affected by the retroactive application of *Ramos*, the *amici* estimated that only 1,302 cases might require new proceedings.[5] *Id*. at 12-15. These estimates are useful in considering the potential impact on our criminal justice system and judiciary. But, those numbers do not just represent cases, those numbers represent individuals whose lives have been directly impacted by an unconstitutional procedure.

This Court finds no legitimate interest in the finality of convictions obtained through a non-unanimous jury verdict scheme designed to ensure inequality and by which the likelihood of an accurate conviction was seriously diminished.

---

[5] They stated that they had gathered record proof of non-unanimous verdicts for 955 individuals, and 646 more individuals assert a non-unanimous verdict for their conviction, but there was not certain proof in the records obtained at the time of the filing of the *amici* brief.

**Louisiana's obligation to act**

In her dissent in *Gipson*, prior to the decision in *Edwards*, Chief Justice Johnson poignantly stated why Louisiana courts have an obligation to act, regardless of the actions of the United States Supreme Court, and retroactively apply the jury unanimity rule:

> There are some rules of procedure untethered to our history of discrimination against African Americans where the question of retroactive application may carry less weight. But this was an intentionally racially discriminatory law that has disproportionately affected Black defendants and Black jurors. There is no principled or moral justification for differentiating between the remedy for a prisoner convicted by that law whose case is on direct review and one whose conviction is final. Both are equally the product of a racist and unconstitutional law. If concerns of comity and federalism ultimately mean that the federal courts do not force us to remedy those convictions which are already final through a writ of habeas corpus, the moral and ethical obligation upon courts of this state to address the racial stain of our own history is even more compelling, not less.

*Gipson*, 19-01815, p. 7, 296 So.3d at 1055-56. We agree. Therefore, in the interests of fundamental fairness, to restore justice and ensure confidence in our criminal justice system, this Court finds that the *Ramos* jury unanimity rule applies retroactively.

## CONCLUSION

For the foregoing reasons, we grant relator's writ, reverse the district court's ruling, and grant the requested relief.

**WRIT GRANTED; RULING REVERSED**